IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZUNIR WILSON-WALKER | : CIVIL ACTION |
| | : |
| v. | : NO. 25-1994 |
| | : |
| M. SPAID, MONTGOMERY COUNTY CORRECTIONAL FACILITY, PRIMECARE MEDICAL, INC. | : : : |

## ORDER – MEMORANDUM

**AND NOW**, this 23rd day of June 2025, upon considering Defendant PrimeCare Medical, Inc.'s Motion to dismiss (ECF 24) the incarcerated Plaintiff's pro se claim of constitutionally deficient denial of medical care for failure to exhaust his administrative remedies and for failing to plead deliberatively indifferent medical care, with no timely Opposition but mindful of the Plaintiff's Notice received today (ECF 26) explaining unexpected movement among correctional facilities resulted in delayed (and as yet undelivered) mailings, and for good cause to allow Plaintiff to plead claims with the benefit of this Memorandum, it is **ORDERED** we:

1. **GRANT** Defendant's Motion (ECF 24) with leave for Plaintiff to file an amended Complaint if he wishes to continue seeking claims against the medical provider demonstrating exhaustion of remedies and pleading facts allowing us to plausibly infer deliberative indifference in providing medical care by no later than **July 25, 2025**;

2. **DENY** Plaintiff's renewed request (ECF 26) for appointment of counsel as premature as more fully described in our May 6, 2025 Order (ECF 13);

3. **DIRECT** the Clerk of Court to mail today's Order as well as our earlier Orders (allegedly undelivered to date) at ECFs 12, 13, 14, and 19 to the Plaintiff, through his identified Number, at <u>both</u> SCI Phoenix <u>and</u> SCI Camp Hill to mitigate the risk in further delayed mail;

4. **AMEND** Defendants M. Spaid's and Montgomery County Correctional Facility's obligations to respond (now due July 7, 2025 [ECF 16]) until **August 1, 2025,** absent the timely filing of an amended Complaint setting a new response date; and,

5. **AMEND** the caption as above to reflect the proper name of Defendant PrimeCare Medical, Inc.[1]

## *Analysis*

The incarcerated Zunir Wilson-Walker claims Lieutenant M. Spaid, the Montgomery County Correctional Facility, and PrimeCare Medical, Inc. denied his civil rights while in custody.[2] Mr. Wilson-Walker asks we declare these state actors violated his civil rights and enter judgment of $750,000 in compensatory damages, nominal damages, $500,000 in punitive damages, costs, an "emergency restraining order against all Defendants," and transfer to the custody of the Philadelphia County prison.[3] PrimeCare moves to dismiss, arguing Mr. Wilson-

---

[1] The proper name of "PrimeCare Health" is "PrimeCare Medical, Inc." *See* ECF 24.

[2] Counsel for PrimeCare Medical, Inc. accepted service of summons and the Complaint on May 19, 2025 (ECF 20) and moved to dismiss. Mr. Wilson-Walker also sued Lieutenant Spaid and the Montgomery County Correctional Facility. Their counsel waived service of summons and Complaint on May 7, 2025, and we today defer their response until the filing of an amended Complaint under this Order. ECF 16.

[3] ECF 2, § VI. We denied Mr. Wilson-Walker's Motion for a temporary restraining order (ECF 10) challenging the conditions of his confinement with supplemental Declarations (ECF 9) concerning the conditions of his confinement and threats against him. ECF 12. Mr. Wilson-Walker again moved for a temporary restraining order through a letter to the Court concerning the conditions of his confinement and mental health issues including suicidal ideation. ECF 18. We denied Mr. Wilson-Walker's letter request for a temporary restraining order, but to allow for a more fulsome review of his mental health concerns, we directed the County's counsel to provide

2

Walker did not exhaust administrative remedies required by the Prison Litigation Reform Act and does not state a claim for deliberate indifference. We today address his claims against PrimeCare Medical for the denial of mental health care.

Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[4] To state a civil rights claim, Mr. Wilson-Walker must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[5]

We assume the truth of Mr. Wilson-Walker's allegations: Lieutenant Spaid punched him in the face multiple times with a closed fist and "jumped" on him on March 13, 2025, while in custody at the Montgomery County Correctional Facility;[6] non-party Nurse Reese examined him and gave him pain medication for his physical injuries but not his psychic injuries;[7] he suffers from

---

us with Mr. Wilson-Walker's status. ECF 19. Counsel provided us with a status update, including Mr. Wilson-Walker's mental health treatment and housing status. ECF 21.

[4] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 provides, in relevant part: "Every person who, under color of any statute ... of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...." 42 U.S.C. § 1983.

[5] *Schneyder v. Smith,* 653 F.3d 313, 319 (3d Cir. 2011). PrimeCare does not contest it is a state actor.

[6] ECF 2, § VII., ¶ E.2 and 19 (using the pagination provided by the CM/ECF docketing system).

[7] *Id.* § V.

3

mental distress, extreme shock and nervousness, anxiety, depression, fear, nightmares, trauma, suicidal thoughts, and racing thoughts.[8]

His psychological injuries from the alleged March 13, 2025 assault are a continuation of alleged "mental illness" beginning with his initial confinement on July 9, 2024;[9] he asked for medical care for psychic injuries he sustained not only from the March 13, 2025 alleged assault but since July 9, 2024; he told unidentified PrimeCare medical staff he felt traumatized and unsafe from the incident with Lieutenant Spaid; and, although conceding placement in the mental health unit, PrimeCare did not "properly treat[] [him]," "get [him] the right help," "constantly refuse[d] to get [him] what's needed to treat [his] mental distress," and "have yet to help [him]" and instead (along with unnamed Correctional Officers) "threw [him]" in mental health "cells" contaminated by fruit flies and human waste.[10]

---

[8] *Id.*

[9] *Id.* at 19. Based on our review of the publicly available docket in the Montgomery County Court of Common Pleas and the representations by the County's Solicitor to our May 14, 2025 Order (ECF 19), the Commonwealth detained Mr. Wilson-Walker at the Montgomery County Correctional Facility beginning July 9, 2024 as a pretrial detainee awaiting trial in Montgomery County on two criminal cases, *Commonwealth v. Wilson-Walker,* No. CP-46-CR-0000337-2024 and *Commonwealth v. Wilson-Walker,* No. CP-46-CR-0000338-2024. ECF 21. From July 26, 2024 to November 2, 2024, the Facility housed Mr. Wilson-Walker in the general population unit. ECF 21 at 1. The dockets in the 2024 criminal matters show Judge O'Neill sentenced Mr. Wilson-Walker on January 27, 2025. On January 28, 2025, while still housed at the Facility and sentenced one day earlier on the 2024 criminal charges, the Commonwealth charged Mr. Wilson-Walker with a new set of criminal charges, *Commonwealth v. Wilson-Walker*, No. CP-46-CR-0000770-2025. ECF 21 at 2. With the new charges, the County conducted a reclassification review, including a medical assessment, resulting in Mr. Wilson-Walker's transfer to a medical housing unit in the Facility on January 28, 2025. ECF 21 at 2. Mr. Wilson-Walker remained in the medical housing unit at the Facility until his transfer to SCI-Camp Hill, as a sentenced person, on May 16, 2025. ECF 21 at 1-2.

[10] ECF 2 at 19.

4

Mr. Wilson-Walker filed on March 17, 22, in the Facility's medical unit, "only 1 Complaint/Grievance" regarding Lieutenant Spaid's March 13, 2025 assault but received no response.[11] Mr. Wilson-Walker does not allege filing a grievance(s) contesting the denial of mental health treatment.

### A. Mr. Wilson-Walker did not exhaust his administrative remedies as to PrimeCare.

Congress, through the Prison Litigation Reform Act, requires incarcerated persons to exhaust administrative remedies available to them before they may challenge conditions of their confinement under federal law.[12] Exhaustion of administrative remedies includes the filing of a grievance through the facility's official procedures and pursuing all levels of appeal for each specific claim and party involved.[13]

Exhaustion of the facility's administrative remedies is an affirmative defense.[14] The Supreme Court instructs an incarcerated person is not required to plead the absence of an affirmative defense or "otherwise plead around it."[15] But we may dismiss the claim where an incarcerated person's failure to exhaust under the Prison Litigation Reform Act is "apparent from the face of the complaint."[16] It is plainly apparent Mr. Wilson-Walker did not exhaust the Facility's administrative remedies with regard to the denial of psychiatric medical care. We do not have the

---

[11] *Id.* § VII., ¶¶ B–E.

[12] 42 U.S.C. § 1997e(a).

[13] *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).

[14] *Id.* at 216.

[15] *Talley v. Clark*, 111 F.4th 255, 264 (3d Cir. 2024) (citing *Jones*, 549 I.S. at 216).

[16] *Id.* (quoting *Ray v. Kertes*, 285 F.3d 287, 297 (3d Cir. 2002)).

5

benefit of alleged exhaustion let alone fact disputes regarding exhaustion intertwined with a substantive claim.[17]

Mr. Wilson-Walker presently does not plead facts from which we can plausibly infer he attempted to address his present mental health treatment concerns through the internal grievance process. He instead admits a nurse assisted him with care and the Facility placed him in a mental health unit. But we allow Mr. Wilson-Walker to amend to possibly plead how he exhausted his remedies before filing suit.

### B. Mr. Wilson-Walker does not plausibly allege constitutionally deficient denial of medical care by PrimeCare.

PrimeCare also moves to dismiss arguing Mr. Wilson-Walker does not allege deliberate indifference to his medical needs and appears only to challenge the adequacy or whether he received "proper" mental health treatment.[18]

---

[17] The Supreme Court held last week incarcerated persons have a right to a jury trial on Prison Litigation Reform Act exhaustion when the "issue is intertwined with the merits of a claim that falls under the Seventh Amendment [right to a jury trial]." *Perttu v. Richards*, 605 U.S. ---, 2025 WL 1698784, at * 5 (June 18, 2025). In *Perttu*, three incarcerated men alleged a prison guard abused them in violation of their constitutional rights, they attempted to exhaust their remedies under the Prison Litigation Reform Act by filing grievances, but the guard destroyed the grievances, threatened to kill them if they filed more grievances, and assigned them to administrative segregation in retaliation for filing grievances all in violation of their First Amendment rights. *Id.* at * 4. Because exhaustion and the First Amendment issues depended on common factual issues, the Court held the incarcerated persons had a right to a jury trial on exhaustion. *Id.* at *5, *10. We have no such allegations from Mr. Wilson-Walker here.

[18] Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint. *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019). If a plaintiff is unable to plead "enough facts to state a claim to relief that is plausible on its face," the court should dismiss the complaint. *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Kajla v. U.S. Bank Nat'l Ass'n as Tr. for Credit Suisse First Boston MBS ARMT 2005-8*, 806 F. App'x 101, 104 n.5 (3d Cir. 2020) (quoting *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Klotz v. Celentano Stadtmauer and Walentowicz LLP*, 991 F.3d 458, 462 (3d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While "[t]he plausibility

6

The Eighth Amendment's prohibition on cruel and unusual punishment forbids "deliberate indifference to serious medical needs of prisoners."[19] Deliberate indifference may take the form of the response to an incarcerated person's medical needs, or the intentional denial or delay of access

---

standard is not akin to a 'probability requirement,'" it does require the pleading show "more than a sheer possibility ... a defendant has acted unlawfully." *Riboldi v. Warren Cnty. Dep't of Human Servs. Div. of Temp. Assistance & Soc. Servs.*, 781 F. App'x 44, 46 (3d Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678). "A pleading that merely 'tenders naked assertion[s] devoid of further factual enhancement' is insufficient." *Id.* (quoting *Iqbal*, 556 U.S. at 668). In determining whether to grant a Rule 12(b)(6) motion, "we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff" but "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Robert W. Mauthe, M.D., P.C. v. Spreemo, Inc.*, 806 F. App'x 151, 152 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878–79 (3d Cir. 2018)). Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "'tak[e] note of the elements a plaintiff must plead to state a claim'"; (2) we "identify allegations that ... 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' ... in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations ... and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'..., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted); *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).

We are "mindful of our obligation to liberally construe a pro se litigant's pleadings ... particularly where the pro se litigant is imprisoned." *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (first quoting *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); then citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)). We are to "remain flexible" and "apply the relevant legal principle even when the complaint has failed to name it." *Yogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala*, 704 F.3d at 244). Under Rule 8(e), "[p]leadings must be construed so as to do justice." Fed. R. Civ. P. 8(e). We are directed by our Court of Appeals this liberal standard is "even more pronounced" where, as here, a plaintiff files a complaint pro se, without assistance of counsel, to "protect pro se litigants from the inadvertent forfeiture of important rights due merely to their lack of legal training." *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (first quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); then citing *Higgs*, 655 F.3d at 339). But "pro se litigants still must allege sufficient facts in their complaints to support a claim" and "cannot flout procedural rules–they must abide by the same rules that apply to all other litigants." *Yogt*, 8 F.4th at 185 (quoting *Mala*, 704 F.3d at 245).

[19] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

to medical care, or intentional interference with treatment once prescribed.[20] Deliberate indifference is a subjective standard consistent with recklessness and, in inadequate medical care claims, our Court of Appeals finds deliberate indifference where objective evidence of a serious need for care is ignored and where "necessary medical treatment is delayed for non-medical reasons."[21]

To plead a violation of the right to medical care, Mr. Wilson-Walker must allege (1) a serious medical need; (2) PrimeCare's deliberate indifference to his need; and (3) the deliberate indifference caused him harm.[22]

PrimeCare concedes Mr. Wilson-Walker pleads a serious medical need. It challenges only his pleading of deliberate indifference.[23] PrimeCare argues Mr. Wilson-Walker challenges the quality of the mental health treatment he received by alleging he did not receive "proper" care.

Deliberate indifference requires allegations "[facility] officials knew of and disregarded 'an excessive risk to inmate health or safety,' meaning a 'substantial risk of serious harm.'"[24] Mr.

---

[20] *Id.* There is some question as to Mr. Wilson-Walker's status at the time of the March 13, 2025 alleged assault by Lieutenant Spaid. Mr. Wilson-Walker awaited trial on criminal charges against him in the Montgomery County Court of Common Pleas at the time of his initial incarceration at the Facility on July 9, 2024. As such, the Fourteenth Amendment applies to his claims as a pretrial detainee of the denial of medical care. *Thomas v. City of Harrisburg*, 88 4th 275, 281, n. 23 (3d Cir. 2023). But the state court convicted him at the time of the alleged assault by Lieutenant Spaid on March 13, 2025. As such, the Eighth Amendment applies to his claims. Our analysis remains the same under the Fourteenth Amendment or Eighth Amendment. The Fourteenth Amendment affords pretrial detainees protections "'at least as great as the Eight Amendment protections available to a convicted prisoner.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

[21] *Thomas*, 88 F.4th at 281 (quoting *Natale*, 318 F.3d at 582).

[22] *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

[23] ECF 24-1 at 6.

[24] *Durham*, 82 F.4th at 229 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

8

Wilson-Walker alleges PrimeCare "constantly refuse[d] to get [him] what he needed to treat [his] mental illness which later caused destruction, incidents, and etc. that only damaged [his] life and mental illness."[25] He claims PrimeCare "failed to provide [him] proper mental health treatment."[26] Mr. Wilson-Walker does not allege facts to support the requisite elements of deliberate indifference: PrimeCare medical staff knew of and disregarded a "substantial risk of serious harm."

Mr. Wilson-Walker does not state an Eighth Amendment claim if based solely on his disagreement on the level of care. There is a distinction "between cases where the complaint alleges a complete denial of medical care and those alleging inadequate medical treatment."[27] Disagreement as to the proper medical treatment does not support an Eighth Amendment claim.[28] Medical care treatment is presumed proper absent evidence a showing it violated professional standards of care.[29] Mr. Wilson-Walker alleges only PrimeCare failed to "properly treat[] [him]" and "get [him] the right help."[30] Disagreement with medical care or a challenge to the adequacy of such care is not an Eight Amendment violation and "mere receipt of inadequate medical care does not itself amount to deliberate indifference" because the state actor must also "act with the

---

[25] ECF 2 at 19.

[26] *Id.*

[27] *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 (3d Cir. 1979)).

[28] *Id.* (quoting *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987)).

[29] *Id.* (quoting *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)).

[30] ECF 2 at 19.

9

requisite state of mind when providing that inadequate care" to rise to an Eighth Amendment violation.[31]

We dismiss Mr. Wilson-Walker's claim for the denial of medical care with leave to file an amended Complaint if he can plead the complete denial or delay of mental health care or some other disregard to an excessive risk to his health or safety.

### C. PrimeCare cannot be vicariously liable and Mr. Wilson-Walker does not plead a basis for supervisory municipal liability.

PrimeCare also argues it cannot, as a matter of law, be vicariously liable for the acts of its unidentified employees who allegedly denied Mr. Wilson-Walker psychiatric care. PrimeCare itself cannot be vicariously liable for the actions of its employees under section 1983 but could be liable under a supervisory theory which requires pleading an unconstitutional policy or custom leading to his injuries.[32] Municipalities cannot be sued under section 1983 for an injury solely inflicted by its employees or agents.[33] PrimeCare Medical, Inc. is a state actor because it contracts with Pennsylvania's Department of Corrections.[34] Liability under section 1983 requires the execution of a municipality's official policy or custom.[35] To state a section 1983 claim against

---

[31] *Pearson*, 850 F.3d at 535 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.13 (3d Cir. 1993)).

[32] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 724 (1978)).

[33] *Monell*, 436 U.S. at 694.

[34] ECF 24 ¶ 2. Private entities like PrimeCare which contract with municipalities to provide services to prisons are acting under color of state law. PrimeCare concedes it contracts with the Facility to provide medical services to incarcerated persons. ECF 24-1 at 1.

[35] *Monell*, 436 U.S. at 694.

10

PrimeCare, Mr. Wilson-Walker must plead (1) a policy or custom; (2) what exactly the policy or custom was; and (3) how it harmed him.[36]

Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.[37] A custom is proven by showing "'a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"[38]

Mr. Wilson-Walker does not allege an unconstitutional policy or custom by PrimeCare. He does not allege an official proclamation or policy by PrimeCare, nor does he point to a specific decisionmaker within PrimeCare with final authority to make an official policy. Mr. Wilson-Walker also does not allege a well-settled course of conduct by PrimeCare.

Because PrimeCare cannot be sued for the acts of its employees, Mr. Wilson-Walker must allege a *Monell* theory which requires stating an unconstitutional policy or custom which caused a constitutional deprivation. He has not done so as yet. We dismiss Mr. Wilson-Walker's claim against PrimeCare with leave to file an amended Complaint if he can plead an unconstitutional policy or custom.

_____
KEARNEY, J.

---

[36] *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009).

[37] *Hightower v. city of Phila.*, 130 F.4th 352, 356 (3d Cir. 2025) (quoting *Forrest*, 930 F.3d at 105).

[38] *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Bielevicz v. Dubinon*, 915 F.3d 845, 850 (3d Cir. 1990)).

11